IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |   |                              |
|--------------------------|---|------------------------------|
| KENNETH BROWN            | : |                              |
|                          | : |                              |
| v.                       | : | Civil Action No. DKC 11-0769 |
|                          | : |                              |
| SIEMENS HEALTHCARE DIAGNOSTICS, INC. | : |                  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action are the motions for summary judgment and to seal filed by Defendant Siemens Healthcare Diagnostics, Inc. ("Siemens" or "the company") (ECF No. 16, 18, 37), and a motion to seal filed by Plaintiff Kenneth Brown (ECF No. 34). The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the company's motion for summary judgment will be granted, and the parties' motions to seal will be granted in part and denied in part.

## I.   Background

### A.   Factual Background

The following facts are either uncontroverted or taken in the light most favorable to Mr. Brown unless otherwise indicated. Mr. Brown is an African-American male who is fifty-nine years old. He began working as a field service engineer

("FSE") at Siemens in 1997.[1]   His duties included initial installation of diagnostic instruments as well as troubleshooting and technical support after completion of the instrument installation process.   From 1997 through 2004, Ronald Overcash, a Caucasian male, served as the customer care manager ("CCM") for Mr. Brown's region.   During this time period, Mr. Brown received yearly raises as well as a rating of either "Exceeds Requirements" or "Meets Expectations" on all of his annual performance evaluations.   (ECF No. 31, Corrected Brown Decl., at 3 ¶ 8).[2]   These ratings encompassed the results that Mr. Brown had received on customer satisfaction surveys throughout the year.

In September 2004, Kristin DiNofrio, a Caucasian female, became CCM for Mr. Brown's region.   The following year, she received three customer complaints regarding his "attitude and

_____

[1] At that time, the company operated under the name Dade Behring.   Following a business combination in 2008, the company's name was changed to Siemens.

[2] This exhibit contains both Mr. Brown's corrected declaration as well as numerous exhibits in support of that declaration.   When referencing the declaration, this memorandum opinion will cite to both the relevant page and paragraph number(s).   (The page numbers represent those assigned by the CM/ECF system.)   When referencing exhibits attached to the declaration, the opinion will cite the relevant page number(s) in the ECF document as well as the exhibit designation provided by Mr. Brown.   The same citation format will be used when referencing the declarations submitted by Siemens.

professionalism," which caused Mr. Brown to rank second to last in his region for customer satisfaction in 2005. (ECF No. 16-5, DiNofrio First Decl., at 2 ¶ 5). Indeed, his customer satisfaction rate for the year was 93.9%, below the target of 95% set forth in the company's annual evaluation form. (ECF No. 31, Ex. F, at 60). Despite these complaints and his comparatively low customer satisfaction rate, Mr. Brown received a rating of "fully meets" with regard to the customer satisfaction indicator on his 2005 annual evaluation. (*Id.*).[3] He also received an annual raise.

Early in 2006, Ms. DiNofrio received a complaint from the laboratory manager at Kaiser, a client in Falls Church, Virginia. "The manager told [Ms. DiNofrio] that Kaiser . . . no longer wanted [Mr. Brown] to be the assigned FSE because of dissatisfaction with his communication regarding scheduling, problem resolution, and service reports." (ECF No. 16-5, at 2 ¶ 6). Because the FSE in line to take over the account lived in Richmond, Virginia, a distance deemed too far away to permit a proper response time if problems arose, Ms. DiNofrio and the laboratory manager "agreed that [Mr. Brown] would continue to be the FSE assigned to the account" and that they would "monitor

---

[3] Mr. Brown's overall rating for 2005 was also "fully meets." (*Id.* at 64).

the situation." (*Id.*).  Ms. DiNofrio did not receive any additional customer complaints about Mr. Brown during 2006,[4] and his annual evaluation stated that his "customer satisfaction survey results . . . were 97.1%," above the company's 95% target, and that he had "fully" met the company's expectations for 2006.  (ECF No. 31, Ex. H, at 81).[5]

In March 2007, approximately one month after receiving his 2006 performance evaluation, Mr. Brown received a "verbal warning" from Ms. DiNofrio and was placed on a work improvement plan.  (ECF No. 16-5, at 2-3 ¶ 7).  The verbal warning explained that three customers had recently contacted Siemens to express dissatisfaction with the service Mr. Brown provided.  First, a customer representative at LabCorp requested a follow-up visit after he failed to leave a machine in operational order after performing scheduled maintenance.  Second, a manager at Shady Grove Adventist Hospital informed Ms. DiNofrio that Mr. Brown "dug his heels in and refused to work on [an] issue" on site when she asked for his help.  (*Id.*, Ex. 7, at 7).  Third, the customer representative at Southern Maryland Hospital complained

_____

[4] Mr. Brown was out of work on short-term disability from August 14, 2006 through November 21, 2006.

[5] For 2006, Mr. Brown's customer satisfaction rating vis-à-vis the peers in his region was "7 out of 16."  (ECF No. 16-5, at 1 ¶ 4).  As in prior years, he received an annual raise.

after Mr. Brown initially agreed to take on its overtime work, but subsequently refused to return to its site to complete that work.  Mr. Brown met with Ms. DiNofrio and her director, Janet Kubik, to discuss these complaints.  At the end of the meeting, Ms. DiNofrio informed him that he was "a good worker" and asked that he "try to avoid this [situation] in the future."  (ECF No. 16-4, Brown Dep., at 17).

On July 9, 2007, Ms. DiNofrio issued Mr. Brown a "first written warning" after receiving two complaints from Washington Adventist Hospital in Takoma Park, Maryland.  (ECF No. 16-5, at 3-4 ¶ 8).[6]  In the first complaint, a customer representative informed Ms. DiNofrio that Mr. Brown's failure to resolve an "ongoing" instrument problem "was unacceptable."  (*Id.*, Ex. G, at 10).  Ms. DiNofrio admonished him for failing to abide by the company's policy that required FSEs to report recurring problems "to a higher level of support."  (*Id.* at 3 ¶ 8).[7]  In the second

_____

[6] The first written warning also noted that Mr. Brown had failed to complete certain administrative tasks in a timely manner and that he had failed to attend a required company conference call.

[7] As to this complaint and a handful of other complaints filed against him, Mr. Brown asserts that his failure to resolve instrument problems did not warrant a warning from Ms. DiNofrio because other FSEs who later visited the customer sites were similarly unable to resolve the problems.  This statement misunderstands the warnings Ms. DiNofrio issued to Mr. Brown. For instance, the nature of the warning here indicates that Ms.

complaint, received approximately one week after the first complaint, multiple managers at the hospital "indicated they no longer want[ed Mr. Brown] to be responsible for their service due to his] failure to meet commitments, as well as [his] attitude and professionalism." (Id., Ex. G, at 11).[8] Indeed, one manager even stated that Mr. Brown "was one key contributing reason why the laboratory discontinued use of [a Siemens machine] and decided upon another vendor." (Id. at 12). Mr.

_____

DiNofrio admonished him not for failure to resolve a particular issue, but for failure to escalate a recurring problem in accordance with company policy.

    [8] Mr. Brown admitted in his deposition – which was taken at the close of discovery – that Siemens had received this complaint from hospital management. (ECF No. 16-4, at 44). In the corrected declaration that he submitted in opposition to the company's motion for summary judgment, however, he states for the first time that it is "untrue" that hospital managers made this complaint. (ECF No. 31, at 8 ¶ 21). According to Mr. Brown, one unidentified hospital manager informed him that she had not complained to Siemens about this issue, thus indicating that the complaint had not been made. This assertion is unavailing. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting [a declaration] contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). Mr. Brown conceded during his deposition that Siemens had received the complaint from hospital management, and his subsequent attempt to contradict that statement in his declaration need not be credited. See Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975-76 (4th Cir. 1990). Moreover, as explained below, even if the court did credit Mr. Brown's newly proffered assertion that one manager at the hospital had informed him she did not make a complaint, the outcome of this case would not change.

Brown, who was carrying a workload significantly in excess of his colleagues at this time, was "happy" to be relieved of the responsibility of this customer account. (ECF No. 16-4, at 44).

In September 2007, Siemens sent Mr. Brown to attend a communications workshop entitled "Enhancing Your Interpersonal Style." (*Id.*). The results were short-lived. On October 24, 2007, following receipt of complaints from St. Mary's Hospital in Leonardtown, Maryland, and Kaiser, Ms. DiNofrio issued Mr. Brown a "final written warning." (ECF No. 16-5, at 5-6 ¶ 11).[9] The complaint from St. Mary's Hospital expressed dissatisfaction with Mr. Brown's response time, "troubleshooting assistance, and . . . attitude." (ECF No. 16-5, Ex. K, at 13). The final warning discussed two complaints from Kaiser. Kaiser initially contacted Ms. DiNofrio about inaccurate documentation that Mr. Brown had prepared after performing unscheduled maintenance on one of its machines. Subsequently, Kaiser submitted a second complaint requesting his removal from its account, stating that his "attitude and professionalism [were] unchanged despite . . . efforts to bring this to [Mr. Brown] and [Ms. DiNofrio]'s

_____

[9] One week prior to the issuance of this warning, Ms. DiNofrio sent an email to the human resources department to request that the company terminate Mr. Brown based on these complaints alone, bypassing the need for a final written warning. The record indicates that this request was denied, as he received a final written warning and was not terminated until three months later.

attention." (*Id.* at 14).   When Ms. DiNofrio followed up with two Kaiser representatives about these issues, one representative informed her that Mr. Brown had approached the other "in [such] a hostile, aggressive manner" while on site that she feared a physical confrontation would result.  (*Id.*). She also indicated that the customer had "lobbied hard" to avoid purchasing another machine from Siemens "because of" Mr. Brown. (*Id.*).   After informing Mr. Brown about these complaints, Ms. DiNofrio advised him that "[a]ny further customer complaints [would] result in [his] immediate termination." (*Id.* at 15).

The 2007 complaints – several of which addressed his "attitude and professionalism" with clients - caused Mr. Brown's annual customer satisfaction rate to decline from the prior year, falling from 97.1% in 2006 to 95.82% in 2007.  This decline also led his ranking among regional peers to drop off significantly:  Although Mr. Brown had ranked in the upper half of regional FSEs for customer satisfaction during 2006, he ranked second to last in the region in this category during 2007 – just as he had in 2005.  Despite these results, Siemens still provided Mr. Brown with a raise for the year.[10]

---

[10] Mr. Brown did not receive an annual evaluation for 2007.

On January 22, 2008, the company received a complaint from Calvert Memorial Hospital, another customer account that Mr. Brown had been assigned to service.  The complaint indicated that Mr. Brown had "basically called [the customer representative] a liar" when the representative attempted to explain the issue that had arisen with one of the hospital's machines.  (ECF No. 16-5, Ex. L, at 18).  The representative also stated that Mr. Brown was unable to fix the problem and that she had to call another FSE to the site two days later to resolve it.  When Ms. DiNofrio received the complaint, she contacted Ms. Kubik and Mr. Overcash, who had since become a manager, to request their advice.  She noted that Mr. Brown disputed some of the feedback that the customer representative had provided in the complaint, explaining that the case presented a "'he said' . . . 'she said'" dilemma, "though [in her opinion] given [Mr. Brown]'s history . . . most likely the 'she said' [was] more accurate."  (ECF No. 31, Ex. N., at 96).[11] Ms. DiNofrio, Ms. Kubik, and Mr. Overcash subsequently agreed that his employment should be terminated, and, on February 29,

_____

[11] For instance, Mr. Brown contended that the customer representative had given him a low rating not because of his interactions with her, but because she had requested service for the hospital's machines two days earlier and the company's dispatcher had failed to transmit the call.  He did not, however, dispute that the representative had made the complaint or that it included the statements discussed above.

9

2008, they met with Mr. Brown to inform him of their decision. The company subsequently hired two younger, Caucasian employees to replace Mr. Brown.

### B.   Procedural Background

Mr. Brown filed a charge of discrimination with the Equal Employment Opportunity Commission on July 17, 2008.   In the charge, he alleged discrimination on the basis of age and race. The EEOC issued a Dismissal and Notice of Rights on December 22, 2010.   The form stated that, "[b]ased upon [the] investigation, the EEOC [was] unable to conclude that the information obtained establish[ed] violations of the statutes." (ECF No. 1-1).

On March 23, 2011, Mr. Brown commenced this action by filing a complaint against Siemens, asserting race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Siemens answered the complaint, and the parties began discovery. On December 2, 2011, following discovery and a one-week extension of the motions deadline, the company submitted a motion for summary judgment as to both counts of the complaint (ECF No. 16), as well as a motion to seal several exhibits submitted in support of the summary judgment motion (ECF No.

18).  Mr. Brown opposed the company's summary judgment motion on January 16, 2012 (ECF No. 30), and moved to seal certain exhibits submitted in conjunction with its opposition (ECF No. 34).  Siemens subsequently replied (ECF No. 35) and moved to seal the exhibits attached to its reply (ECF No. 37).

## II.  Motion for Summary Judgment

### A.  Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The party moving for summary judgment has the initial burden to demonstrate that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  In asserting that there is no genuine dispute of fact, a moving party must cite to materials in the record or show that the fact cannot be genuinely disputed.  For instance, a moving party may assert that the opposing party cannot produce

admissible evidence to support a fact on which that adverse party will have the burden of proof.   Thereafter, a party may "object that the material cited [by the other party] cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).   In the face of such an objection, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."   Fed.R.Civ.P. 56(c)(2) advisory committee notes (2010 amendment).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"   *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).   "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."   *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).   At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.   *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**B.  Analysis**

Siemens has moved for summary judgment on both the race and age discrimination claims in Mr. Brown's complaint.  He responds in three ways.  First, he contends that Siemens has failed to meet its "initial burden" because much of the evidence in support of its summary judgment motion is inadmissible.  (ECF No. 30, at 3).  Second, Mr. Brown asserts that, even considering this evidence, genuine disputes of material fact remain regarding whether his performance satisfied the company's legitimate expectations at the time of his termination.  Third, he argues that there is sufficient evidence to demonstrate that the company's reason for terminating him is pretextual.  These arguments – all of which Siemens has opposed - will be addressed in turn.

**1.  Admissibility of the Company's Exhibits**

Mr. Brown initially contends that Siemens is not entitled to summary judgment because the company "has failed to produce admissible evidence sufficient to carry [its] initial burden" on summary judgment.  (ECF No. 30, at 3).  Specifically, he argues that much of the evidence submitted by Siemens is inadmissible hearsay because it is "in the form of alleged complaints" and "surveys of customers."  (*Id.* at 7).  He also suggests, albeit briefly, that the company's exhibits were not properly

13

authenticated.[12]  Mr. Brown asserts that, without these exhibits, the company's motion for summary judgment must be denied.

At the outset, even if the company's exhibits are inadmissible, Mr. Brown's suggestion that Siemens is somehow precluded from seeking summary judgment due to a failure to produce admissible evidence is incorrect.  Where the plaintiff has the ultimate burden of proof at trial, as in the present case, a moving defendant is required only to show the absence of a genuine dispute of material fact; it need not affirmatively present evidence to maintain a motion for summary judgment.  The commentary to the recent amendments makes clear that the rule of *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in [former] Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."), has not changed.  *See* Fed.R.Civ.P. 56(c)(1)(B) advisory committee notes (2010 amendment) ("And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot

─────────────────

[12] In its reply, Siemens presents a similar argument, contending that certain exhibits submitted by Mr. Brown are inadmissible because they contain hearsay or have not been authenticated.  This argument need not be resolved here because, regardless of whether the court considers the challenged exhibits, the outcome of the analysis in the memorandum opinion will not change.

14

produce admissible evidence to carry its burden as to the fact.").

In any event, Mr. Brown's evidentiary objections are without merit, and the court may, therefore, consider the company's exhibits when resolving the summary judgment motion. Mr. Brown's hearsay argument fails for three reasons. First, it is not clear that this objection is proper under Rule 56. Rule 56(c)(2) was amended in 2010 to provide that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The objection now "contemplated by the amended Rule [thus] is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Ridgell v. Astrue*, No. DKC 10-3280, 2012 WL 707008, at *9 (D.Md. Mar. 2, 2012) (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D.Mich. Oct. 31, 2011)). Mr. Brown has made no such argument here. Second, assuming *arguendo* that the objection was proper, Mr. Brown likely waived his hearsay argument with regard to nearly all of the company's exhibits by relying on customer complaints and customer satisfaction survey results – the very types of items he challenges here - in his opposition papers. (*Compare, e.g.*, ECF No. 16-5, at 2-5 ¶¶ 7-9, *with, e.g.*, ECF No. ECF No. 31, at 8-9

15

¶ 24); *cf. Motor Club of Am. Ins. Co. v. Hanifi*, 145 F.3d 170, 175 (4th Cir. 1998) (holding that the defendant waived its hearsay objection to evidence proffered by the plaintiff in opposition to a motion for summary judgment where the defendant had submitted the same evidence in support of its own prior motions).   Third, to the extent not waived, the hearsay objection fails on the merits because Siemens offered the customer complaints and survey results not to prove the truth of their contents, but to prove that it had received this feedback about Mr. Brown's performance and terminated his employment for a non-discriminatory reason.   *Pounds v. Bd. of Trs.*, 215 F.3d 1320, 2000 WL 655936, at *6 (4th Cir. 2000) (table opinion) (reasoning that "management's testimony regarding third parties' complaints about working with the plaintiff was not hearsay because it was offered to demonstrate the employer's non-discriminatory intent and not to prove the truth of the complaints" (citing *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1456 (9th Cir. 1983))); *Brill v. Lante Corp.*, 119 F.3d 1266, 1271 (7th Cir. 1997) (same); *see also Brown v. Hous. Auth. of Calvert Cnty.*, 150 F.Supp.2d 856, 867 (D.Md. 2001), *aff'd*, 26 F.App'x 339 (4th Cir. 2002), *disagreed with on other grounds by Booth v. Maryland*, 327 F.3d 377 (4th Cir. 2003).[13]

---

[13]   Mr. Brown's citation to *Rowland v. American General*

Mr. Brown's authentication argument is similarly unavailing. He states that "Rule 56 requires that each document be authenticated" before it can be considered in resolving a summary judgment motion. (ECF No. 30, at 9). Following the 2010 amendments to Rule 56, this statement no longer accurately reflects the law. Indeed, those amendments "eliminated the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated." *Akers v. Beal Bank*, --- F.Supp.2d ----, 2012 WL 639287, at *3 (D.D.C. Feb. 29, 2012) (internal quotation marks and citation omitted). Mr. Brown's argument also overlooks the fact that Siemens has authenticated each of the exhibits that it submitted in support of its motion for summary judgment.[14] The contested exhibits consist of customer satisfaction surveys, customer complaints, employee rankings, and warning letters with which Ms. DiNofrio had direct involvement. Ms. DiNofrio also stated in her declaration that she had "personal knowledge of and [was]

---

*Finance, Inc.*, 340 F.3d 187, 194 (4th Cir. 2003), is unpersuasive because the defendant in that case introduced a customer complaint to demonstrate the truth of the matter asserted, i.e., that the plaintiff lacked "people skills," not merely to prove that the complaint had been made.

[14] Tellingly, Mr. Brown actually authenticated several of these exhibits during his deposition, making his objection on this ground disingenuous at best.

competent to testify [about] the matters" discussed in her declaration and that the referenced exhibits were "true and accurate" copies of the items that they purported to be. (ECF No. 16-5, at 1-6 ¶¶ 4-12). These circumstances are sufficient to authenticate documents under Federal Rule of Evidence 901, particularly given that "[t]he authentication requirement is rarely onerous." *Goguen* ex rel. *Estate of Goguen v. Textron, Inc.*, 234 F.R.D. 13, 17 (D.Mass. 2006); *see also Bury v. Marietta Dodge*, 692 F.2d 1335, 1337-38 (11th Cir. 1982), *reh'g denied*, 701 F.2d 947 (11th Cir. 1983) (table opinion).[15] Accordingly, all of the company's exhibits are admissible and may be considered when resolving its summary judgment motion.

## 2. *Prima Facie* Case of Race and Age Discrimination

Because he lacks any direct evidence of race or age discrimination, Mr. Brown must proceed under the indirect

---

[15] Mr. Brown also briefly argues that many of the customer complaints submitted by Siemens, which reflect customer impressions about him, are inadmissible because "they are only conclusions and not facts." (ECF No. 30, at 8). In support of this argument, he cites case law holding that affidavits supporting summary judgment motions cannot be "conclusory" and "devoid of specific facts." (*Id.* (citing *Rohrbough*, 916 F.2d at 975)). This misguided argument is without merit. The impressions mentioned in the customer complaints derived from customers' interactions with Mr. Brown, but they are not "conclusions" or "conclusory" in the sense that he contends. Rather, they are *facts* conveying to Siemens various customer experiences with Mr. Brown, and such evidence is admissible on summary judgment. *See Ze-Ze v. Kaiser Permanente Mid-Atl. States Regions, Inc.*, 833 F.Supp.2d 544, 549-52 (E.D.Va. 2011).

"burden-shifting" framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff establishes a claim for unlawful race or age discrimination by demonstrating the following four elements: (1) he was a member of a protected class; (2) he experienced an adverse employment action; (3) he was performing his job at a level that met his employer's legitimate expectations at the time of the adverse action; and (4) his position either remained open or was filled by a similarly qualified applicant outside the plaintiff's protected class. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006) (age); *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 317-18 (4th Cir. 2005) (race). It is undisputed that Mr. Brown is an African-American male who was over the age of forty at the time of his termination and that two younger, Caucasian employees replaced him.

The parties disagree, however, about whether Mr. Brown can demonstrate that he was satisfying the company's legitimate expectations when he was terminated. According to Siemens, Mr. Brown cannot make the required showing on this element because the complaints that the company received about his performance during 2007 and 2008, as well as the low ranking he received vis-à-vis his regional peers, prove that his performance was not satisfactory at the time of his termination. Mr. Brown

19

disagrees, emphasizing that he received positive performance evaluations and raises throughout his tenure at Siemens.[16]

Although the plaintiff bears the burden of establishing that he was meeting the company's legitimate expectations at the time of his termination, this burden "is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To make this showing,

> [a] plaintiff need not show perfect performance or even average performance. . . . He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him. . . . [P]roof of competence sufficient to make out a *prima facie* case of discrimination was never intended to encompass proof of superiority or flawless performance.

*Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2[d] Cir. 1978)

(quoting *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th

---

[16] He also maintains that he did not engage in the conduct underlying some of the customer complaints. (ECF No. 31, at 7-9 ¶¶ 19, 23, 26, 27). Given that Siemens relies on these complaints to demonstrate the negative feedback it received about Mr. Brown, not the truth of the statements within the complaints, this argument is unavailing. *See Brill*, 119 F.3d at 1271 ("The question is not whether [Plaintiff] actually referred to a client as an 'idiot' and suggested that he be shot; what is important is [Defendant]'s *honest belief* that she said those things."); *Ze-Ze*, 833 F.Supp.2d at 549 (explaining that a plaintiff's disagreement about "the specific factual circumstances leading to . . . patient complaints" was not instructive in determining whether she met her employer's legitimate expectations because she had not denied that the employer had received these complaints).

Cir. 1977)).   An employee makes this minimal showing where he can demonstrate that he was generally satisfying his employer's relevant, objective performance standards at the time of his termination.   *See, e.g.*, *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 & n.1 (4th Cir. 2003) (holding that the district court erred in concluding that the employee had not "adduced sufficient evidence to meet her burden of demonstrating that she was performing satisfactorily at the time of [certain] adverse employment actions" where she had recently received a pay raise and was informed by management that her work was "satisfactory").

Here, Mr. Brown has presented evidence sufficient to create a genuine factual dispute regarding whether his performance – though far from flawless – was sufficient to satisfy the company's legitimate expectations at the time of termination. The record indicates that Siemens received numerous customer complaints about Mr. Brown's performance during 2007 and 2008, several of which related to his "attitude and professionalism," and that he ranked second to last in the region in customer satisfaction in 2007.   It is undisputed, however, that Siemens provided Mr. Brown with a raise during 2007, and that Mr. Brown's customer satisfaction rate for that year was 95.82%, nearly one percentage point above the target rate set forth in

the company's performance evaluation form.[17]  This latter fact is particularly probative when compared with Mr. Brown's performance in 2005, a year in which he also ranked second to last in the region in customer satisfaction and received numerous customer complaints but nonetheless "fully" met company expectations by achieving a customer satisfaction rate of 93.9%. (ECF No. 31, Ex. F, at 60).[18]  Taking the facts in the light most favorable to Mr. Brown and given that the employee's *prima facie* burden is not "onerous," *Burdine*, 450 U.S. at 253, there is at least a dispute of material fact as to whether Mr. Brown met the company's performance expectations during the relevant time period.  *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 401 (7th Cir. 1992) (concluding that an employee had created a

_____

[17] The parties have not submitted any data about Mr. Brown's customer satisfaction rate or peer ranking for 2008, presumably because his termination occurred early in the year before the company calculated this information.

[18] Siemens contends that Mr. Brown's pre-2007 performance evaluations "do[] not establish that his job performance met [its] legitimate expectations in 2007 and in early 2008, when his employment was terminated." (ECF No. 35, at 7).  The company is correct that past performance evaluations generally do not inform a decision regarding whether a plaintiff was performing satisfactorily at the time of his termination. *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996).  In this instance, however, Mr. Brown's 2005 evaluation sheds light on whether he may have been performing in a satisfactory manner at the time of his termination due to the numerous similarities in his performance during these times.

22

triable issue of fact regarding whether he was meeting his employer's expectations where, despite numerous customer and co-worker complaints against him, he received a positive performance evaluation and pay raise during the period leading up to his termination); *see also James v. Runyon*, 843 F.Supp. 816, 822-23 (N.D.N.Y. 1994) (concluding that the plaintiff established a *prima facie* case of discrimination where she "performed to the standards set by [her employer]" for new employees even though she also "received unsatisfactory marks on her evaluation forms"), *aff'd*, 47 F.3d 1158 (2$^d$ Cir. 1995) (table opinion).[19]

### 3.   Legitimate Non-Discriminatory Reason and Pretext

Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Hux v. City of Newport News, Va.*, 451 F.3d 311, 314-15 (4th Cir. 2006). "This is a burden of production, not of proof or persuasion, so the reasons proffered need not ultimately persuade the [c]ourt, as long as the defendant offers

---

[19] The cases cited by Siemens in support of its position that the complaints against Mr. Brown "prevent him from establishing that his performance was meeting [its] legitimate expectations" are distinguishable. (ECF No. 16-1, at 14). Unlike the instant case, no evidence existed in any of those cases to suggest that the plaintiffs were potentially performing satisfactorily at the time of their termination.

a legitimate [age] and race-neutral rationale for its decision." *Ze-Ze*, 833 F.Supp.2d at 548 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the defendant's proffered non-discriminatory reason is pretextual.

An employer's receipt of customer complaints expressing dissatisfaction with an employee's performance may constitute a legitimate, non-discriminatory reason for terminating the employee.  *Parra v. Four Seasons Hotel*, 605 F.Supp.2d 314, 327-28 (D.Mass. 2009).  Indeed, even where an employee has created a dispute of fact regarding the satisfactory nature of his performance at the *prima facie* stage, courts have concluded that an employer may rely on those complaints to justify the employee's termination.  *E.g.*, *Anderson*, 965 F.2d at 401 (concluding that an employer had set forth a legitimate, non-discriminatory reason for terminating an employee based on customer and co-worker complaints even though the employee had created a triable issue of fact at the *prima facie* stage with regard to whether his performance was satisfactory); *Lopez v. Schwan's Sales Enters., Inc.*, 845 F.Supp. 1440, 1445 (D.Kan. 1994) (same); *cf. Bass*, 324 F.3d at 766 & n.1 (upholding a district court's grant of summary judgment to an employer based

24

on the legitimate, non-discriminatory reason of inadequate performance although the employee demonstrated that her performance was satisfactory for purposes of the *prima facie* showing); *Gregory v. Daly*, 243 F.3d 687, 696-97 (2[d] Cir. 2001) (explaining that dissatisfaction with an employee's performance may constitute a legitimate, non-discriminatory reason for an adverse action even though the employee has made the "minimal showing" at the *prima facie* stage that "she 'possesses the basic skills necessary for performance of [the] job'").

Here, Siemens has presented evidence that it terminated Mr. Brown's employment due to the "well-documented record of customer complaints" expressing dissatisfaction with the service he provided. (ECF No. 16-1, at 17). Mr. Brown does not dispute that Siemens received at least seven complaints about his performance from March through October of 2007 and that the company issued him numerous warnings about these issues as a result. (ECF No. 16-5, Ex. K, at 13).[20]   He also does not

---

[20] Siemens has introduced evidence that it received a ninth complaint during this period.   According to the company's records, multiple managers at Washington Adventist Hospital in requested that Mr. Brown be removed from the account in June 2007.   Although he conceded during his deposition that Siemens had received such a complaint, Mr. Brown asserted in his corrected declaration that one manager at the hospital told him she did not file a complaint about him.   He then concluded that the company's assertion about receiving the complaint must be "untrue."   (ECF No. 31, at 8 ¶ 21).   Even if the court were to

dispute that his final written warning, issued in October 2007, expressly stated that any future customer complaints would result in immediate termination and that Siemens terminated him after it received an additional complaint in January 2008. While Mr. Brown informed the company that he disputed the factual circumstances underlying this complaint, the record indicates that the company ultimately credited the customer's account. It is not the province of the court to decide whether that decision was "wise" or "correct." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted). All that matters is that the decision be facially race- and age-neutral, and the evidence indicates that it was. In light of this evidence, Siemens has met its burden of articulating a legitimate, non-discriminatory reason for Mr. Brown's termination, and the burden shifts back to Mr. Brown to demonstrate pretext. *Anderson*, 965 F.2d at 401.

---

credit Mr. Brown's declaration – which it need not do given that the declaration contradicts his prior deposition testimony, this statement is ultimately not probative of whether Siemens received this complaint from hospital management. The record demonstrates that numerous hospital managers complained to Ms. DiNofrio about Mr. Brown's performance and requested that another FSE be assigned to the account. The fact that *one* unidentified manager told Mr. Brown that she was not involved in this complaint does not demonstrate that the complaint was not made.

26

"[A] plaintiff demonstrates pretext by showing the employer's proffered nondiscriminatory reason [for the plaintiff's termination] is a lie and the real reason is based on discriminatory intent." *Smith v. Vilsack*, 832 F.Supp.2d 573, 584 (D.Md. 2011) (quoting *Hobbs v. City of Chi.*, 573 F.3d 454, 462 (7th Cir. 2009)); *DeJarnette*, 133 F.3d at 298. Here, despite the litany of arguments advanced by Mr. Brown, he wholly fails to do either. He begins by asserting that the company's hiring of two younger, Caucasian employees to replace him suggests pretext. This argument, by itself, is insufficient. *See La Montagne v. Am. Convenience Prods., Inc.*, 750 F.2d 1405, 1413-14 (7th Cir. 1984) (concluding that the "mere fact" that a younger person had replaced the plaintiff did not demonstrate pretext); *cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000) (noting that a plaintiff must – at a minimum – demonstrate a *prima facie* case "combined with sufficient evidence to find that the employer's asserted justification is false" to succeed in an employment discrimination suit); *Price v. Thompson*, 380 F.3d 209, 214, 217 n.5 (4th Cir. 2004) (quoting *Reeves* for the same proposition and noting that, "although *Reeves* will allow a plaintiff to survive summary judgment without presenting independent evidence of discrimination," it does so only in cases where the evidence of discrimination is

27

"strong").   Mr. Brown must, therefore, present evidence beyond the fact that his replacements were not in his protected class to demonstrate pretext and avoid summary judgment.

According to Mr. Brown, the court should infer from his record of positive customer satisfaction ratings and pay raises that the company's decision to terminate him was discriminatory. This argument is unavailing.  "[T]o show pretext, it does not [generally] help for [the plaintiff] to repeat the proof that his job performance was generally satisfactory.  That question has already been resolved in his favor.  The [c]ompany advanced [a] specific reason for his discharge, and his rebuttal evidence should be focused on [that specific reason]."  *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1223 (7th Cir. 1991) (quoting *La Montagne*, 750 F.2d at 1414), *overruled in part on other grounds by Oxman v. WLS-TV*, 12 F.3d 652, 657 (7th Cir. 1993).[21]  "Unless he attacks the specific reason[] given for a termination, a plaintiff who stresses evidence of satisfactory

---

[21] Courts have acknowledged that "there may be some cases where evidence of satisfactory performance is the *only* way to expose an employer's reason as pretext, and in such cases the same proof may be used to make a *prima facie* case and show pretext."  *Anderson*, 965 F.2d at 404 n.2; *see Cuello-Suarez v. Puerto Rico Electric Power Authority*, 988 F.2d 275, 280 (1st Cir. 1993); *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 19 (7th Cir. 1987).  Those cases, however, involve situations where the employer attempted to justify an adverse action based upon an employee's purportedly poor performance, while the record demonstrated only that the plaintiff had performed well.

performance is simply challenging the wisdom of the employer's decision, which [the courts] have consistently refused to review." *Anderson*, 965 F.2d at 403 (citing *Castleman v. Acme Boot Co.*, 959, F.2d 1417, 1422 (7th Cir. 1992); *see also DeJarnette*, 133 F.3d at 299 (explaining that courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination"). Because Mr. Brown's overall customer satisfaction ratings and pay raises are merely evidence of "generally adequate performance" – rather than challenges to the specific reason for his discharge, they are insufficient to demonstrate pretext. *Anderson*, 965 F.2d at 404 n.2.

Mr. Brown next argues that the company's decision to terminate him must have been discriminatory because the January 2008 complaint was "tainted" and, although the company terminated him after receiving it, "in the past," Siemens had voided such complaints and refused to consider them in evaluating its FSEs. (ECF No. 16-4, at 55-57) (explaining that the customer representative was already "hostile" when Mr. Brown arrived for service because the company dispatcher failed to pass along the service request until two days following its submission). This argument is also without merit. As previously noted, while Mr. Brown may disagree with the factual

circumstances underlying this complaint, he has never disputed
that it called into question – yet again – his treatment of a
customer representative and that the company believed it to
reflect accurately the events that occurred on site.
Additionally, the only "evidence" Mr. Brown offers in support of
the company's alleged prior practice of voiding "tainted"
complaints involved a circumstance in which an unauthorized
person had submitted a complaint to Siemens.  In that single
instance – given the person's lack of authorization to make a
complaint, Siemens declined to use it in evaluating an FSE.
There is no evidence that such a circumstance existed with
regard to the January 2008 complaint.  Mr. Brown's argument
regarding this complaint thus appears to be no more than "mere
disagreement[]" with the company's termination decision, which
is wholly insufficient to show pretext.  *Cf. McCain v. Waste
Mgmt., Inc.*, 115 F.Supp.2d 568, 574 (D.Md. 2000) (explaining
that an employee's "mere disagreement[] with the employment
decision" cannot serve as the basis for a discrimination claim).

Mr. Brown further contends that the company's articulated
reason for his termination is "subjective" and, therefore,
pretextual, because Carol Zachary, a "similarly-situated"
Caucasian FSE, was not terminated despite the fact that Siemens
had received numerous complaints about her.  (ECF No. 30, at 19-

20).   To demonstrate that employees are similarly situated, a plaintiff must "clearly establish[]" a "substantial similarity" between himself and his comparator.   *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008); *Popo v. Giant Foods, LLC*, 675 F.Supp.2d 583, 589 (D.Md. 2009).   That is, the similarly situated employees must have "engaged in the same conduct without . . .   mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."   *Heyward v. Monroe*, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (table opinion) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1982)).

The record precludes Mr. Brown from making such a showing. The parties agree that, similar to Mr. Brown, Ms. Zachary received three customer complaints in a short period,[22] that she then received a verbal warning from Ms. DiNofrio and was placed on a work improvement plan, and that Siemens sent her to a workshop regarding interpersonal communications.   According to Mr. Brown, Ms. DiNofrio's treatment of Ms. Zachary demonstrates pretext because Ms. DiNofrio dismissed Ms. Zachary's verbal

---

[22]   Mr. Brown has submitted as exhibits six customer complaints against Ms. Zachary.   The parties appear to agree, however, that two of those complaints significantly pre-dated her verbal warning and are not instructive in determining whether she and Mr. Brown were similarly situated.

warning, while she issued Mr. Brown written warnings and subsequently terminated his employment.  This argument, however, overlooks critical factual differences between Mr. Brown's and Ms. Zachary's circumstances. Indeed, "[n]o customer ever asked [Ms. DiNofrio] to take Ms. Zachary off of [its] account."  (ECF No. 35-1, DiNofrio Sec. Decl., at 3 ¶ 14).  Additionally, after receiving her verbal warning, Ms. Zachary "showed an immediate and sustained improvement in her communication skills," with no customers filing any complaints against her during the three-month period preceding dismissal of the warning.  (*Id.* at 2 ¶¶ 11-12).[23]

No such improvement occurred in Mr. Brown's case.  In the three-month period following his verbal warning, Siemens received two additional customer complaints – one of which requested Mr. Brown's removal from an account.  Following receipt of these complaints, Ms. DiNofrio issued him a written

---

[23] Nearly three months after dismissal of Ms. Zachary's verbal warning, Ms. DiNofrio received one complaint about Ms. Zachary's failure to inform a customer about her estimated arrival time.  Ms. DiNofrio discussed the complaint with Ms. Zachary but concluded that the issue "did not warrant disciplinary action" due to "Ms. Zachary's overall improvement in . . . communications."  (*Id.* at 2-3 ¶¶ 12-13) (explaining that Ms. DiNofrio began "receiving compliments from customers" about Ms. Zachary during this period and that Ms. Zachary even earned the award for "FSE of the Second Quarter for the Region").

warning.   The complaints nonetheless continued and became more serious in degree, with one representative asking Ms. DiNofrio to remove Mr. Brown from a customer account following a confrontation that nearly became physical.   The differences in both the number and type of complaints received about Mr. Brown makes his situation "a far cry" from that of Ms. Zachary, *Ze-Ze*, 833 F.Supp.2d at 552 (internal quotation marks omitted).   They were, therefore, not similarly situated, and his attempt to show pretext on this basis fails.[24]

In a final effort to avoid summary judgment, Mr. Brown asserts that the company's decision to hire Greg McDearmon, a Caucasian male, rather than Randy Thomas, an African-American male who was purportedly more qualified, to fill an open FSE position demonstrates that its motivation for terminating his employment was racially discriminatory.   This argument, while long on conjecture, is wholly devoid of factual support. Indeed, the record does not state the qualifications of the FSE position for which the two men applied, when they submitted

---

[24] In his deposition, Mr. Brown also contended that he was similarly situated to other FSEs who either had complaints filed against them or received verbal warnings.   This argument is easily dismissed.   It is undisputed that customers filed – at most – one complaint against each of these FSEs and that none of those complaints were similar in degree and kind to those filed against Mr. Brown.   Additionally, although one FSE other than Mr. Brown and Ms. Zachary received a verbal warning, the warning was wholly unrelated to customer complaints.

their applications, in what way Mr. Thomas's qualifications exceeded those of Mr. McDearmon, who made the employment decision, or why that decision would have any bearing on whether Mr. Brown's termination was discriminatory.   At bottom, the contention is nothing more than Mr. Brown's unsubstantiated opinion that Siemens operated in a racially discriminatory manner.[25]   Such "bald allegations" are "insufficient to counter substantial evidence of [a] legitimate, non-discriminatory reason[] for [an] adverse employment action."   *Nichols v. Comcast Cablevision of Md.*, 84 F.Supp.2d 642, 651 (D.Md. 2000) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)), *aff'd*, 217 F.3d 840 (4th Cir. 2000) (table opinion); *see also Korotko-Hatch v. John G. Shedd Aquarium*, 65 F.Supp.2d 789, 800-01 (N.D.Ill. 1999) (concluding that an employee had failed to demonstrate pretext in an age discrimination case based solely on "her own conclusory allegations" that the terminations of similarly aged co-workers were discriminatory).[26]

---

[25] Mr. Brown conceded during his deposition that he was not involved in the hiring process for this position in any way.

[26] At various times throughout the record, Mr. Brown notes that Ms. DiNofrio would frequently avoid eye contact with him during conversations and that Mr. Overcash had once refused to drive the golf cart when playing golf with Mr. Brown.   To the extent he believes these circumstances bolster his argument for pretext, that belief is misguided.   *Cf. EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (reasoning that

34

Because Mr. Brown has failed to demonstrate pretext through any of these arguments, the company's motion for summary judgment will be granted.

## III. Motions to Seal

Both parties have also filed unopposed motions to seal. A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of

---

"[w]orkplaces are not always harmonious locales" and that "incidents that would objectively give rise to bruised or wounded feelings" may well not be actionable under the employment discrimination statutes (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).

access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Before sealing any documents, the court must provide the non-moving party with notice of the request to seal and an opportunity to object. *Id.* This notice requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id.* at 234. Finally, the court should consider less drastic alternatives to sealing, such as filing redacted versions of the documents. If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.* at 235.

The parties seek to seal certain exhibits submitted in conjunction with their motion papers. These exhibits, filed pursuant to a stipulated confidentiality order, include personnel records for the other FSEs in Mr. Brown's region, internal quarterly reports, customer complaint templates documenting the complaints received about Mr. Brown and Ms. Zachary, Mr. McDearmon's resume, an email from Ms. DiNofrio to the human resources department regarding Mr. Brown's termination, and a portion of Mr. Brown's deposition testimony. With regard to the personnel records, internal quarterly

reports, customer complaint templates against Ms. Zachary, and Mr. McDearmon's resume, the "confidential" designation would not seem to be without basis.  Indeed, as the parties note, these documents contain sensitive information – such as birthdates, salaries, and background information – about non-parties to the case as well as proprietary commercial data belonging to Siemens.  *See Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (affirming decision to seal certain "confidential, proprietary, commercial, or financial data" that was produced under a protective order); *EEOC v. Fry's Elecs., Inc.*, --- F.Supp.2d ----, 2012 WL 1642305, at *5 (W.D.Wash. May 10, 2012) (granting a motion to seal "the personnel records of employees who are not parties to this litigation").

The requests to seal the remaining exhibits will be denied.[27]  The information contained in Mr. Brown's customer complaint templates and Ms. DiNofrio's email to the human resources department requesting his termination are discussed at length in the parties' summary judgment memoranda as well as numerous other exhibits – none of which the parties have sought

---

[27] These exhibits are:  ECF No. 16-6, Exs. E, H-J; ECF No. 32, Ex. K; and, ECF No. 32, Ex. 6.

to seal.[28]   Sealing these underlying documents would, therefore, serve no purpose.   *See Butler v. DirectSAT USA, LLC*, --- F.Supp.2d ----, 2012 WL 1203980, at \*12 (D.Md. Apr. 10, 2012) (denying a motion to seal documents that were discussed extensively in an unsealed memorandum).   Additionally, the deposition testimony that Mr. Brown seeks to seal does not contain any proprietary business data or sensitive employee information, and that is the only reason he has articulated in his motion to seal.   These exhibits will, therefore, be unsealed.

## IV.  Conclusion

For the foregoing reasons, the company's motion for summary judgment will be granted, while the parties' motions to seal will be granted in part and denied in part.   A separate Order will follow.

_____
                    /s/
DEBORAH K. CHASANOW
United States District Judge

_____

[28]  The discussion in these documents of the customer complaints regarding Mr. Brown was far more extensive and detailed than the discussion of the complaints regarding Ms. Zachary.   It is for this reason that the customer complaint templates involving Ms. Zachary will be sealed even though those involving Mr. Brown will not.